**STATE of Iowa, Plaintiff–Appellant,**

v.

**Guy CHRISTOFFERSEN, Defendant–Appellee.**

No. 07–1271.

Court of Appeals of Iowa.

July 16, 2008.

Thomas J. Miller, Attorney General, Cristen Douglass and Mary Tabor, Assistant Attorneys General, Matthew Wilber, County Attorney, and Amy Zacharias, Assistant County Attorney, for appellant.

Mark C. Smith, State Appellate Defender, and Stephan Japuntich, Assistant Appellate Defender, for appellee.

Considered by VOGEL, P.J., and ZIMMER and MILLER, JJ.

VOGEL, P.J.

The State charged Guy Christoffersen with operating while intoxicated, second offense. Christoffersen filed a motion to suppress, which alleged the stop of his vehicle was "without reasonable and articulable suspicion or probable cause." The district court granted Christoffersen's motion and the State sought discretionary review, which was granted by our supreme court. Because we agree with the State that the stop of Christoffersen's vehicle was supported by reasonable suspicion, we reverse.

## I. Background Facts and Proceedings

On March 27, 2007 at approximately 2:15 p.m., Council Bluffs Officer Jason Bailey received a call from dispatch and was advised of a possible intoxicated driver in the parking lot of a Subway restaurant located at "26th and Broadway." The vehicle involved was described as a blue GMC pickup. Officer Bailey, who was only six blocks away at the time of the call, arrived at the restaurant parking lot in approximately thirty seconds. He observed someone getting into the driver's seat of a blue GMC pickup and pulled in behind Christoffersen's vehicle. Just after Officer Bailey got out of his vehicle, Christoffersen put the pickup in reverse and backed into Officer Bailey's police cruiser. Subsequently, Christoffersen's blood alcohol content was determined to be .238.

The State charged Christoffersen with operating while intoxicated, second offense in violation of Iowa Code section 321J.2 (2007). Christoffersen moved to suppress all the evidence obtained from the stop of his vehicle. The district court granted the motion finding "the officer's detention of defendant, by moving his cruiser behind defendant's vehicle to prevent him from leaving, was not supported by a reasonable suspicion that defendant had committed a crime." The State was granted discretionary review by our supreme court and seeks reversal of the district court's ruling.

## II. Scope of Review

■ We review claimed violations of constitutional rights de novo in light of the totality of the circumstances. *State v. Walshire*, 634 N.W.2d 625, 626 (Iowa 2001).

## III. Analysis

■ The Fourth Amendment of the United States constitution requires that an investigatory stop be supported by reasonable suspicion that criminal activity may be afoot. *Id.*

> When a person challenges a stop on the basis that reasonable suspicion did not exist, the State must show by a preponderance of the evidence that the stopping officer had specific and articulable facts, which taken together with rational inferences from those facts, to reasonably believe criminal activity may have occurred.

*State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004).

> Whether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the

circumstances confronting the officer, including all information available to the officer at the time the officer makes the decision to stop the vehicle.

*Id.*

The State asserts that the anonymous tip, as corroborated by the officer, provided reasonable suspicion to conduct an investigatory stop and cites to *State v. Walshire*, 634 N.W.2d 625 (Iowa 2001) (finding an anonymous tip provided reasonable suspicion to conduct an investigatory stop) and *State v. Markus*, 478 N.W.2d 405 (Iowa Ct.App.1991) (same). Christoffersen asserts both the Iowa and United States constitutions require more information be provided to justify the stop. U.S. Const. amend. IV; Iowa Const. art. I, § 8; *See State v. Boley*, 456 N.W.2d 674, 677 (Iowa 1990) ("When state and federal constitutional sections encompass the same protections, we usually consider them identical in scope and purpose."). Christoffersen also cites to both *Walshire* and *Markus* by comparing specific facts and argues "there was no description of driving, no identification of the driver and no license number from which to glean reasonable suspicion." However, there are factual distinctions between the cited cases and the present case and we analyze each case "in light of the totality of the circumstances confronting [the] police officer." *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002).

In the present case, the anonymous call came from a citizen informant who reported a possible drunk driver. *See Walshire*, 634 N.W.2d at 629 (stating there is a rebuttable presumption that a citizen informant's tip is generally reliable). The informant further gave a description and the precise location of the vehicle. Officer Bailey responded quickly and arrived at the parking lot in approximately thirty seconds. He then discovered the vehicle described at the location described, which corroborated the informant's tip. *Walshire*, 634 N.W.2d at 628 ("When the officers found the informant to be accurate concerning the vehicle's description and location, they had reason to believe the informant was also accurate as to the alleged criminal activity." (quoting *Markus*, 478 N.W.2d at 408)). In addition, the suspicious activity was open to the public view. *See id.* at 629 (distinguishing between the concealed crime of a possessory offense and the public crime of operating while intoxicated).

Once Officer Bailey confirmed the tip's accuracy as to the vehicle description and observed someone entering the driver's side of the vehicle, it was unnecessary to allow the alleged drunk driver to leave the parking lot only to put the public at risk. *Id.* at 628 ("[I]ndependent corroboration of the *inculpatory* details of a defendant's tip is not mandatory." (quoting *Markus*, 478 N.W.2d at 408)). It would have been a dereliction of duty for the officer to allow an alleged intoxicated driver to simply enter the public roadway without confirming or dispelling the suspicion of criminal activity. *Kreps*, 650 N.W.2d at 642–43 (discussing that where reasonable suspicion exists, citizens would be critical had the officer chose not to take any action). "The principal function of an investigatory stop is to resolve the ambiguity as to whether criminal activity is afoot." *Id.* at 642.

Further, our supreme court has recognized that a drunk driver creates a great danger and a sense of urgency. *Walshire*, 634 N.W.2d at 629 ("Indeed, a drunk driver is not at all unlike a 'bomb,' and a mobile one at that." (quoting *State v. Boyea*, 171 Vt. 401, 765 A.2d 862, 867 (2000)) (emphasis omitted)). Setting aside Christoffersen's ramming the police cruiser, the police contact consisted of a brief vehicle stop and conversation. Considering the

potential danger a drunk driver poses to the public, the brief investigatory stop was a minor intrusion on Christoffersen. *Id.* at 630; *see State v. Keehner*, 425 N.W.2d 41, 44 (Iowa 1988) (balancing the intrusion on an individual's privacy interests against the legitimate governmental interests in determining whether an investigatory stop was valid). We therefore conclude that the information provided by the anonymous tip, as corroborated by the officer's observations, was sufficient to establish reasonable suspicion for the investigatory stop, and thus Christoffersen's constitutional rights were not violated.

**REVERSED.**