# IN THE SUPREME COURT OF IOWA

No. 11–0738

Filed June 28, 2013

**STATE OF IOWA,**

Appellee,

vs.

**LEON KOOIMA,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Sioux County, Robert J. Dull, Judge.

A defendant seeks further review of a court of appeals decision affirming the district court's order overruling his motion to suppress. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**

Randy L. Waagmeester of Waagmeester Law Office, PLC, Rock Rapids, for appellant.

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, Coleman J. McAllister, County Attorney, and Jared R. Weber, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

The police received an anonymous tip reporting a drunk driver. The officer stopped the vehicle and arrested the driver for operating a motor vehicle while under the influence, second offense, in violation of Iowa Code section 321J.2 (2009). The driver contended the stop was illegal under the United States and Iowa Constitutions and moved to suppress the evidence obtained from the stop. The district court denied the motion, and the court found the driver guilty of the charge. The driver appealed, and we transferred the case to the court of appeals. The court of appeals affirmed the district court ruling on the motion to suppress. We took the case on further review. On further review, we find the stop was illegal under the Fourth Amendment of the United States Constitution. Thus, we need not decide whether the stop violated the Iowa Constitution. Accordingly, we suppress all evidence seized from the illegal stop. Moreover, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for a new trial consistent with this opinion.

### I. Facts.

On our de novo review, we find the facts are as follows. On Wednesday, June 16, 2010, Leon Kooima, along with five other men, left Rock Valley to attend a charity golf event in Okoboji. All six men rode together in a silver Chevrolet Suburban registered to Van Zee Enterprises of Rock Valley. After completing the course, Kooima and the rest of the group attended a dinner and program in conjunction with the charity event.

Following the dinner, Kooima and the group left the golf course. Kooima drove for the entirety of the return trip to Rock Valley. On the way back, Kooima made several stops. They visited two group members'

farms and one of their lake houses. Afterwards, a member of the group suggested going to the Doon Steakhouse. The group stopped there around 10:30 p.m. Another patron at the steakhouse was Craig Post.

After about an hour, Kooima and the rest of the group got into their vehicle to leave the steakhouse. Post subsequently called 911 at approximately 11:21 p.m. Post did not identify himself to the dispatcher. A transcript of the call details the following exchange:

> Dispatcher: 911 where is your emergency?
>
> Caller: [H]i, not sure if this is a serious emergency, but I'm not sure what other number to dial.
>
> Dispatcher: [O]k, that's fine.
>
> Caller: Um, please check cars in Doon area.
>
> Dispatcher: Cars in the Doon area?
>
> Caller: Yeah.
>
> Dispatcher: Ok.
>
> Caller: BC229, BC229 silver suburban.
>
> Dispatcher: Ok, what's it doing?
>
> Caller: Um, carload of Rock Valley merchants, huge money guys.
>
> Dispatcher: Ok.
>
> Caller: And they are loaded, leaving Doon, and they are still sitting on curbside, ready to leave to Rock Valley.
>
> Dispatcher: Ok.
>
> Caller: What bothers me is these guys get away with everything, cuz they know everybody in Rock Valley and they think they can do everything.
>
> Dispatcher: You're saying, you think they are drunk, you mean?
>
> Caller: I know they are.

Dispatcher: Ok.

Caller: Everybody in the damn vehicle is.

Dispatcher: Ok and where are they at right now?

Caller: In Doon, on curbside, and

Dispatcher: Like downtown or what?

Caller: Yeah.

Dispatcher: Ok.

Caller: They are opening their doors to get the last passengers in and then they are leaving.

Dispatcher: Ok.

Caller: This includes people that own Van Zee Enterprises and they are on a golf outing and they think that they are home free.

Dispatcher: Gotcha.

Caller: And it bothers me a lot.

Dispatcher: Ok, I can have somebody go check it out.

Caller: 10-4, get on that right away.

Dispatcher: Alright.

Caller: And this thing is full of drunks.

Dispatcher: Ok.

Caller: Thank you.

Dispatcher: You're welcome, thank you.

Caller: BC229.

Dispatcher: Got it.

A review of the audio tape reveals Post spoke in a monotone voice throughout the phone call.

The dispatcher then broadcast the following radio transmission:

> Attention Sioux County cars possible [intoxicated driver] special attention Rock Valley, possible [intoxicated driver] license number BC229, vehicle is just leaving Doon at the moment, [reporting party] stated all occupants are [intoxicated and in] . . . a silver 2009 Chevy Suburban registered to a Rock Valley address 2015 North Main, end of broadcast . . . .

As Kooima drove over the hill into Rock Valley, he passed a parked police car operated by Officer Kyle Munneke. Approximately eight minutes passed from the time of the dispatch to the time Munneke saw the vehicle. Munneke followed Kooima all the way through town, staying a block to a block-and-a-half behind. During Munneke's observations of the vehicle for approximately six blocks, the officer witnessed no traffic or equipment violations that would have provided an independent basis for the stop.

As Kooima turned west onto Highway 18, Officer Travis Ryan followed the vehicle for a block. Ryan did not observe the vehicle make any traffic or equipment violations. Based solely on the anonymous phone tip, Ryan initiated a stop at approximately 11:38 p.m. After Munneke approached the vehicle and Kooima asked the officer what was wrong, Munneke said the only reason for the traffic stop was the anonymous tip, which indicated there was a "carload of drunks on the way to Rock Valley."

Kooima cooperated with the officers. Ryan detected the smell of alcohol on Kooima's breath, so he conducted several field sobriety tests, including the horizontal gaze nystagmus test, the walk-and-turn test, and the one-legged-stand test. Because Kooima failed these tests and based upon the anonymous tip, Ryan arrested Kooima for operating while intoxicated and transported him to the Rock Valley Police Department. There, Kooima consented to a breath specimen. A breath

test conducted at 1:15 a.m. revealed Kooima's blood alcohol level was .088.

Other relevant facts are discussed below.

## II.  Prior Proceedings.

The State charged Kooima on July 1 with operating a motor vehicle while under the influence, second offense, in violation of Iowa Code section 321J.2.  On July 22, Kooima moved to suppress all evidence obtained from the stop.  Kooima contended the stop violated his constitutional rights guaranteed by the United States and Iowa Constitutions because the police acted upon an anonymous tip.  The district court denied Kooima's motion.  Kooima then sought discretionary review, which we denied.

The case proceeded to a bench trial.  The district court found Kooima guilty.  Kooima appealed.  We transferred the case to the court of appeals.  The court of appeals affirmed the district court.  Kooima sought further review, which we granted.

## III.  Issues.

The issue before the court is whether the investigatory stop of Kooima by the Rock Valley police violated his rights against unreasonable searches and seizures under the Fourth Amendment of the United States Constitution or article I, section 8 of the Iowa Constitution.

## IV.  Standard of Review.

Kooima argues the district court should have granted his motion to suppress on state and federal constitutional grounds because the State deprived him of his right against unlawful searches and seizures.  *State v. Ochoa,* 792 N.W.2d 260, 264 (Iowa 2010) (recognizing a motion to suppress based on the deprivation of the defendant's constitutional right

against unlawful searches and seizures). We review constitutional issues de novo. *State v. Kreps*, 650 N.W.2d 636, 640 (Iowa 2002).

## V. Analysis.

Kooima claims the State violated his rights under both the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. We may construe the Iowa Constitution differently than its federal counterpart, despite the provisions containing nearly identical language and being structured generally with the same scope, import, and purpose. *See State v. Pals*, 805 N.W.2d 767, 771–72, 781–83 (Iowa 2011) (noting our more stringent application of state constitutional provisions than federal caselaw applying nearly identical federal counterparts); *Varnum v. Brien,* 763 N.W.2d 862, 879 n.6 (Iowa 2009) (observing "we have jealously guarded our right to 'employ a different analytical framework' under the state equal protection clause as well as to independently apply federally formulated principles" (citations omitted)). Further, even where a party has not advanced a different standard for interpreting a state constitutional provision, we may apply the standard more stringently than federal caselaw. *State v. Bruegger,* 773 N.W.2d 862, 883 (Iowa 2009); *Racing Ass'n of Cent. Iowa v. Fitzgerald,* 675 N.W.2d 1, 4–7 (Iowa 2004). Because we can decide this case under the Federal Constitution, we need not conduct an analysis utilizing the Iowa Constitution. *Ochoa,* 792 N.W.2d at 267; *cf. Racing Ass'n of Cent. Iowa,* 675 N.W.2d at 4 (deciding the case under the Iowa Constitution after the United States Supreme Court overruled our decision based on the United States Constitution).

The Fourth Amendment prevents governmental officials from arbitrarily intruding into citizens' privacy and security. *Camara v. Mun. Ct.,* 387 U.S. 523, 528, 87 S. Ct. 1727, 1730, 18 L. Ed. 2d 930, 935

(1967). Stopping an automobile and detaining its occupants constitutes a seizure under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396, 59 L. Ed. 2d 660, 667 (1979). A police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1, 10 (1989).

The Supreme Court has discussed when an anonymous tip provides a sufficient indicia of reliability to give rise to reasonable suspicion for an investigatory stop of a vehicle. The first decision typically referenced in this debate is *Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). This case articulates the reasonable suspicion standard for an investigatory stop.

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*White,* 496 U.S. at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309. In *White*, the Court recognized that whether an anonymous tip provides reasonable suspicion for an investigatory stop depends on the quantity and quality, or degree of reliability, of that information, viewed under the totality of the circumstances. *Id.* "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.*

In *White,* the anonymous tip stated:

Vanessa White would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station

wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case.

*Id.* at 327, 110 S. Ct. at 2414, 110 L. Ed. 2d at 306–07. Acting upon this tip, the officers were able to identify the vehicle as it left the apartments, as well as confirm its route and destination to a specific motel. *Id.* at 327, 110 S. Ct. at 2414, 110 L. Ed. 2d at 307. Although the officers did not observe any criminal activity afoot, they stopped the vehicle. *Id.* The police found drugs in the driver's possession and charged her accordingly. *Id.* at 327, 110 S. Ct. at 2415, 110 L. Ed. 2d at 307.

The Supreme Court held the stop, based solely on the anonymous tip, did not violate the Fourth Amendment. *Id.* at 331, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309. The tip contained more information than just the bare assertion the driver possessed drugs. *Id.* at 331–32, 110 S. Ct. at 2416–17, 110 L. Ed. 2d at 309–10. The tip contained specific information about the broken taillight, the place where the trip started, the driver's route, and the driver's destination to a specific motel that turned out to be accurate. *Id.* The Court reasoned the tip had the requisite indicia of reliability to justify an investigatory stop because the general public would have had no way of predicting the defendant's anticipated movements; therefore, it would have been nearly impossible for anyone except a person who was intimately involved with the defendant to accurately predict that the defendant would be in her car at the particular time and place described. *Id.* at 332, 110 S. Ct. at 2417, 110 L. Ed. 2d at 310. In reaching its decision, the Court characterized the matter as "a close case." *Id.*

In contrast to *White,* the second decision typically referenced in this constitutional conversation is *Florida v. J.L.,* 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000). *J.L.* involved an anonymous tip

stating a young man, who was wearing a plaid shirt and waiting at a particular bus stop, was carrying a concealed gun. *Id.* at 268, 120 S. Ct. at 1377, 146 L. Ed. 2d at 258–59. The tip was the only information available to the police. *Id.* The officers did not see a weapon or have any reason to believe the young man had a weapon on his person. *Id.* at 268, 120 S. Ct. at 1377, 146 L. Ed. 2d at 259.

With nothing more than the tip, the officers stopped and frisked the young man and found a gun in his possession. *Id.* The State charged the young man with a weapons violation. *Id.* at 269, 120 S. Ct. at 1377, 146 L. Ed. 2d at 259. The Supreme Court held the search violated the Fourth Amendment because it lacked the requisite indicia of reliability to justify an investigatory stop. *Id.* at 271, 120 S. Ct. at 1379, 146 L. Ed. 2d at 260. The Court acknowledged the tip was specific enough to identify the alleged perpetrator. *Id.* at 272, 120 S. Ct. at 1379, 146 L. Ed. 2d at 261. However, nothing about the tip showed the tipster had knowledge of concealed criminal activity. *Id.* For the tip to give rise to reasonable suspicion, the Court held the tip must have some indicia of reliability in its assertion of illegality and its tendency to identify a determinate person. *Id.*

After these decisions, lower courts have had to apply this law to situations where police officers receive anonymous tips regarding drunk drivers. The seminal federal circuit court case comes from the Eighth Circuit. *United States v. Wheat*, 278 F.3d 722 (8th Cir. 2001). There, an anonymous motorist called 911 to report a vehicle was passing others "on the wrong side of the road, cutting off other cars, and otherwise being driven as if by a 'complete maniac.' " *Id.* at 724. The caller provided a general description of the vehicle, its location, and the first three letters of the license plate. *Id.* Upon observing the vehicle, a

patrolling officer stopped it immediately, without noticing any erratic driving. *Id.* at 724–25. The court concluded an officer is not required to corroborate an anonymous tip reporting drunk driving when the tip's innocent details—the description and location of the vehicle—were accurate, there was an urgency presented by the drunken or erratic highway driver, and there was minimal intrusion involved in stopping the vehicle. *Id.* at 731–34. The court emphasized the tip need not contain predictive aspects when the illegal conduct is public, and the tipster is oftentimes observing the illegal conduct contemporaneously with making the report. *Id.* at 734.

State courts have also dealt with this situation under the United States Constitution. Our court did so in *State v. Walshire*, 634 N.W.2d 625 (Iowa 2001). In *Walshire*, police received an anonymous tip from a motorist using a cell phone to report a driver was drunk. *Id.* at 626. The tipster observed the driver operating his vehicle in the median. *Id.* Our court upheld the stop, concluding that when a tipster relays details of the crime personally observed, the anonymous tip contains the requisite indicia of reliability. *Id.* at 628–29.

Courts around the country tend to agree with the holdings in *Wheat* and *Walshire*, finding a tip has the requisite indicia of reliability under the Fourth Amendment when the anonymous tipster relates that he or she has personally observed erratic driving open to public view. *See, e.g.*, *People v. Wells*, 136 P.3d 810, 815–16 (Cal. 2006) (finding the likelihood of harassment or an insincere or unreliable report of drunk driving is "significantly reduced" by the fact a phoned-in report involves an anonymous tipster providing "a contemporaneous event of reckless driving presumably viewed by the caller" and a predictive "analysis is more appropriate in cases involving tips of concealed criminal behavior

such as possession offenses"—not in the DUI context where the illegal activity is visible); *State v. Prendergast*, 83 P.3d 714, 724 (Haw. 2004) (emphasizing the tip must be "firmly rooted in time and place and based on firsthand observations of criminal activity," as well as the totality of circumstances and specific, articulable facts); *Bloomingdale v. State*, 842 A.2d 1212, 1213 (Del. 2004) (upholding a stop when the officer did not observe any erratic driving but pulled over a driver based on an anonymous tipster who stated there was a possible drunken motorist "driving all over the roadway" between two streets; described the make, model, color, and license plate of the vehicle; and relayed the driver's race and travel route); *State v. Crawford*, 67 P.3d 115, 119 (Kan. 2003) (holding an anonymous tip had the requisite indicia of reliability when the caller described his or her observations as "reckless driving"); *State v. Rutzinski*, 623 N.W.2d 516, 519, 527–28 (Wis. 2001) (holding an anonymous tip had the requisite indicia of reliability to justify a stop when the caller told the police of the alleged erratic driving, automobile location, and vehicle description).

Cases holding an anonymous tip had the sufficient indicia of reliability to justify the stop contain three common elements. First, the tipster gave an accurate description of the vehicle, including its location, so the police could identify the vehicle. Next, the tipster based his or her information on personal, eyewitness observations made contemporaneously with a crime in progress that was carried out in public, identifiable, and observable by anyone. When a tipster relates personal observations consistent with drunk driving to the dispatcher, the caller's basis of knowledge is apparent. Finally, the caller described specific examples of traffic violations, indicating the report was more than a mere hunch. This lends to a greater likelihood the tip will give

rise to reasonable suspicion. These three elements allow our courts and the police to determine whether an anonymous tip contains sufficient detail to permit a reasonable inference the tipster had the necessary personal knowledge that a person was driving while intoxicated.

On the other hand, when the anonymous tip does not include details pertaining to the tipster's personal observation of erratic driving, other facts that would lead to a reasonable inference the tipster witnessed an intoxicated driver, or details not available to the general public as to the defendant's future actions, state supreme courts have ruled the stop violated the Fourth Amendment. *See State v. Lee*, 938 P.2d 637, 640 (Mont. 1997); *State v. Miller*, 510 N.W.2d 638, 645 (N.D. 1994); *Harris v. Commonwealth,* 668 S.E.2d 141, 147 (Va. 2008).

In *Harris*, an anonymous informant called the police department to report "there was a[n] intoxicated driver in the 3400 block of Meadowbridge Road, [who] was named Joseph Harris, and he was driving [a green] Altima, headed south, towards the city, possibly towards the south side." 668 S.E.2d at 144. The tipster did not detail any personal observations about the manner in which the driver was operating the vehicle. *Id.* However, the tipster provided a partial license plate number for the vehicle and indicated the driver was wearing a striped shirt. *Id.* The police report did not include the time period when the caller observed the suspect driver. *Id.* The police officer observed the vehicle driving within the posted speed limit and did not observe the car swerve, but did see the car's brake lights flash three times at various intersections and red stoplights. *Id.* After proceeding through one of the intersections, the driver navigated the car to the side of the road and stopped. *Id.* The officer then initiated a stop. *Id.* The court found the anonymous tip alone was insufficient to stop the driver, and the driver's

act of slowing at an intersection and stopping at the side of the road was insufficient conduct "to corroborate the criminal activity alleged in the anonymous tip." *Id.* at 147.

The State of Virginia requested the Supreme Court grant certiorari to review the court's decision in *Virginia v. Harris*, which the Court denied. *Virginia v. Harris*, 558 U.S. 978, 130 S. Ct. 10, 175 L. Ed. 2d 322 (2009). Two justices dissented from the denial of certiorari, arguing "[t]he imminence of the danger posed by drunk drivers exceeds that at issue in other types of cases." *Id.* at _____, 130 S. Ct. at 11, 175 L. Ed. 2d at 323. The justices appear to rely upon the following language in *J.L.*:

> We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk.

*J.L.*, 529 U.S. at 273–74, 120 S. Ct. at 1380, 146 L. Ed. 2d at 262.

As a court interpreting the Fourth Amendment, we cannot rely on a dissent from a denial of a petition for writ of certiorari for guidance. However, we do acknowledge that the Supreme Court left intact as good law the Virginia Supreme Court's interpretation of the Fourth Amendment as it applied to an anonymous tip regarding drunk driving that did not include a personal observation of erratic driving or other facts to substantiate the driver was intoxicated.

As *J.L.* teaches us, without a means for the police to test an anonymous tipster's personal knowledge or credibility, the tip is nothing more than a hunch. *J.L.*, 529 U.S. at 271, 120 S. Ct. at 1379, 146 L. Ed. 2d at 260–61. Without such information, the tip has no indicia of reliability in its assertion of illegality.

In *Lee*, the anonymous tip consisted of the statement "that a purple Chevrolet Camaro with a tan convertible top, driven by David Lee, was heading toward Glasgow on the Fort Peck highway. The complainant believed Mr. Lee was under the influence of alcohol, and speeding." 938 P.2d at 638. When the officer observed the vehicle, the driver did not exhibit any signs he was driving under the influence or speeding. *Id.* at 638–40. The Montana Supreme Court held:

> [T]here was no objective data from which the officer could reach any conclusion justifying the investigative stop. Therefore, we conclude that under the totality of the circumstances, as applied to the facts in this case, information provided by the citizen informant alone, with no other objective data, does not support a particularized suspicion that Lee had been engaged in wrongdoing.

*Id.* at 640.

In *Miller*, the court analyzed the tip as an anonymous one. 510 N.W.2d at 644. There, the tip "described the vehicle as a red pickup and gave its license plate number and location as second in line in the drive-up lane. The dispatcher also relayed the informant's statement that the driver 'could barely hold his head up.'" *Id.* at 639. When the officer found the vehicle, he followed it. *Id.* The officer did not observe anything unusual about the driver's operation of the pickup. *Id.* The North Dakota Supreme Court found the quantity of information given by the tipster did not lead to a reasonable inference the tipster personally witnessed an intoxicated driver. *Id.* at 644.

Cases decided by us and other courts require a personal observation of erratic driving, other facts to substantiate the allegation the driver is intoxicated, or details not available to the general public as to the defendant's future actions in order to spawn a reasonable inference the tipster had the necessary personal knowledge that a person

was driving while intoxicated and the stop comports with the requirements of the Fourth Amendment. To hold otherwise would cause legitimate concern because such tips would let the police stop persons on anonymous tips that might have been called in for vindictive or harassment purposes or based solely on a hunch or rumor. These types of tips do not have the requisite indicia of reliability in their assertion of illegality because the information relayed to the police does not lead to a reasonable inference the tipster had the necessary personal knowledge that a person was driving while intoxicated.

The State cites *State v. Christoffersen*, 756 N.W.2d 230 (Iowa Ct. App. 2008), as controlling precedent. It is easily distinguishable. There, the suspect backed into the reporting police officer's patrol car. *Id.* at 231. This constituted an obvious offense committed in the presence of a police officer, which served as the basis for the stop and subsequent arrest for operating while intoxicated. Consequently, we overrule *Christoffersen* to the extent it stands for the proposition that a bare assertion by an anonymous tipster reporting drunk driving provides reasonable suspicion to stop a vehicle.

Accordingly, we hold a bare assertion by an anonymous tipster, without relaying to the police a personal observation of erratic driving, other facts to establish the driver is intoxicated, or details not available to the general public as to the defendant's future actions does not have the requisite indicia of reliability to justify an investigatory stop. Such a tip does not meet the requirements of the Fourth Amendment.

Applying these principles to the tip concerning Kooima, the undisputed facts are the tipster did not relay a contemporaneous observation of erratic driving or any facts that would indicate the persons getting in the vehicle exhibited any signs of intoxication. We do

acknowledge the tipster did tell the dispatcher the vehicle "was ready to leave to Rock Valley." However, this predictive behavior is of a type that would be known to the general public in Sioux County. It was not information that would likely be known only by those intimately involved with Kooima and his associates.

We reach this conclusion for a number of reasons. The persons getting in the vehicle did so in a public setting where anyone at the bar could have observed their conduct. The tipster did not know for sure where the vehicle was going. He first told the dispatcher to check the Doon area. Later in the call, he said they were leaving for Rock Valley. The occupants of the vehicle were well known in the area because they were successful businessmen. Any person at the bar would be able to surmise that at 11:20 p.m. on a Wednesday night, these four well-known businessmen from Rock Valley would most likely be going home at that time of night. Thus, the tipster was not basing the information he relayed to the dispatcher on intimate involvement with Kooima by predicting the defendant would be in his car at the particular time and place described. The tipster used information available to the general public in surmising where Kooima might be heading.

Our holding is consistent with the differences in information provided by the tipsters in *White* and in *J.L.* In *White*, the defendant was leaving from a private motel room to do a drug transaction at a certain place at a certain time. *White*, 496 U.S. at 327, 110 S. Ct. at 2414, 110 L. Ed. 2d at 306–07. Only someone with intimate knowledge of what the defendant was doing would be able to predict that behavior. In other words, it was more likely than not the tipster was with the defendant or talked to her shortly before she left the motel. The general public would

not know the details as to when the defendant would have left the motel or where she was going.

In *J.L.*, the observations relayed to the police were such that anyone in the general public could observe. The observations relayed to the police were that the defendant was a young man, wearing a plaid shirt at a particular bus stop. *J.L.*, 529 U.S. at 268, 120 S. Ct. at 1377, 146 L. Ed. 2d at 258–59. Just as in this case, the facts relayed by the tipster in *J.L.* could be observed by the general public and did not indicate the tipster was someone with intimate knowledge of what the defendant was doing in order to be able to predict future behavior.

Therefore, we reverse the ruling of the district court on the motion to suppress and find the stop of Kooima was illegal. In doing so, the evidence seized from the illegal stop must also be suppressed under the fruit of the poisonous tree doctrine. *Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S. Ct. 407, 415–16, 9 L. Ed. 2d 441, 453–54 (1963).

Before concluding, we stress this court does not condone drunk driving. However, our oath requires us to uphold the Constitution of the United States as interpreted by the Supreme Court. Additionally, we commend the dispatcher who took the 911 call. The dispatcher asked probing questions in an attempt to get more facts concerning the tipster's knowledge that the driver was intoxicated. The only responses the dispatcher received to her inquiries was that "I know they are" or "And this thing is full of drunks." We hope that in the future, a dispatcher will be able to get more than conclusory statements from the anonymous caller, so the tip has the requisite indicia of reliability in its assertion of illegality to justify a stop under the Fourth Amendment.

**VI. Summary and Disposition.**

We do not decide this case under the Iowa Constitution because we resolve this issue based upon the Fourth Amendment of the United States Constitution. In doing so, we find the investigatory stop of Kooima was illegal under the Fourth Amendment. Accordingly, we suppress all evidence seized from the unconstitutional stop. Moreover, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for a new trial consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**

All justices concur except Mansfield, J., Cady, C.J., and Waterman, J., who dissent.

#11–0738, *State v. Kooima*

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. I believe the tip provided a sufficient basis for the stop of the vehicle under the standards we set forth in *State v. Walshire* and have reiterated here.

In *Walshire*, we upheld a stop based on an anonymous telephone tip that the defendant was driving in the median. We stated:

> We believe the following factors distinguish this case from *J.L.*:
>
> (1) In this case the informant revealed the basis for his knowledge—he was observing a crime in progress, open to public view; (2) in the present case, a serious public hazard [drunk driving] allegedly existed that, in the view of the Supreme Court, might call for a relaxed threshold of reliability; and (3) the intrusion on privacy interests [with a traffic stop] is slight, less than in a pat-down situation.

634 N.W.2d 625, 630 (Iowa 2001). I find the present case constitutionally indistinguishable from *Walshire*.

At 11:21 p.m. on June 16, 2010, the 911 call came in. The caller told the dispatcher that a "carload of Rock Valley merchants," including people "that own Van Zee Enterprises," were "loaded," "sitting on curbside," and getting ready to leave Doon for Rock Valley.[1] In response to questioning from the dispatcher, the caller confirmed they were drunk. He described them as "opening their doors to get the last passengers in and then they are leaving." They were in a silver Suburban license plate BC229. They had been on a golf outing and, according to the caller, thought they were "home free." The caller was not asked to provide further details or to give his name.

---

[1] The majority says that the tipster "did not know for sure where the vehicle was going." I disagree. The transcript of the call is reproduced in full in the majority opinion. The caller made it clear the individuals were "ready to leave to Rock Valley."

A summary of this information was passed along to the Rock Valley police. About ten minutes later, two Rock Valley police officers saw the vehicle arrive in town from the direction of Doon. They verified the license plate and description, and were told the vehicle was registered to Van Zee Enterprises with a Rock Valley address. They saw multiple people in the vehicle. Although no traffic violations were observed, a decision was made to stop the vehicle. I believe that was a correct, not an unconstitutional, decision.

Three points about the tip should be noted. First, although the tipster did not *say* he had actually observed the group of intoxicated individuals get into the car, this is a pretty obvious inference from the call:

> Dispatcher: Ok and where are they at right now?
>
> Caller: In Doon, on curbside, and
>
> Dispatcher: Like downtown or what?
>
> Caller: Yeah.
>
> Dispatcher: Ok.
>
> Caller: They are opening their doors to get the last passengers in and then they are leaving.

A 911 dispatcher listening to this narrative would reasonably assume it was based on personal observation. *See Kaysville City v. Mulcahy*, 943 P.2d 231, 237 (Utah Ct. App. 1997) ("That Olsen reported a 'drunk individual' without explaining why he thought the person was drunk does not by itself nullify reasonable suspicion."), *abrogated on other grounds by State v. Sadler*, 104 P.3d 1265, 1272 (Utah 2004).

Given the further details provided elsewhere in the call and the late hour (11:21 p.m.), it doesn't require much in the way of inference to conclude that the tipster had seen the group stop in downtown Doon for

drinks after their golf outing and was now watching them in their intoxicated state preparing to head home to Rock Valley. If he had not seen them close up, how would he know they had been on a golf outing that day?

It is true that unlike the tipster in *Walshire* who claimed to have seen erratic driving, the caller here described a group of drunk people getting into a car to drive it home. But since the crime is actually drunk driving, not erratic driving, I do not think that puts the *Walshire* stop on firmer constitutional ground. It is noteworthy that in both cases, the officers who stopped the vehicle did not actually see anything wrong with how the vehicle was being driven. And in *Walshire*, but not here, the tipster refused to give a name. 634 N.W.2d at 626.

Second, by the time of the stop in this case, the Rock Valley officers had corroborated several predictive statements in the call. They saw the silver Suburban arriving in Rock Valley with the identified license plate from the direction of Doon, about ten minutes after the call. (We can take judicial notice that Rock Valley is eight miles driving distance from Doon.) Several people were in the car. The car was registered to Van Zee Enterprises with a Rock Valley address. The officers initiated a stop after confirming these details. *See id.* at 628 (stating that " '[i]ndependent corroboration of the *inculpatory* details of a defendant's tip is not mandatory' " (quoting *State v. Markus*, 478 N.W.2d 405, 408 (Iowa Ct. App. 1991))).

I think the present case is comparable to one decided by the South Dakota Supreme Court. *See State v. Scholl*, 684 N.W.2d 83 (S.D. 2004). There, an anonymous informant called police to report the defendant "leaving Scarlet O'Hara's bar stumbling pretty badly and having problems getting into [his] Toyota Tacoma pickup." *Id.* at 84 (internal

quotation marks omitted) (alterations in original). The informant provided a license plate number, vehicle description, and location. *Id.* An officer found the truck where the informant said it would be, followed it for about eleven blocks, and "stopped the vehicle solely on the basis of the informant information." *Id.* The officer had confirmed the "innocent details" such as license number and vehicle description, but did not witness any moving violations, erratic driving, or anything else suggesting the driver was impaired. *Id.* at 84, 86.

The court concluded the stop was valid because (1) the informant provided detailed information allowing the officer to confirm the identity of the vehicle it stopped and (2) the informant's tip included sufficient details of possible criminal activity, namely, stumbling from a bar and difficulty getting into an automobile. *Id.* at 88–89. The stop was valid despite the informant's lack of "specific examples of moving violations." *Id.* at 88. The court noted that "[i]t requires no leap of logic or common sense to deduce that a person stumbling from a bar late in the evening and exhibiting difficulty getting into his car may well be under the influence of alcohol and incapable of safely operating his vehicle." *Id.*

In another, more recent unnamed-informant case, the South Dakota Supreme Court again upheld a traffic stop of a vehicle even though the officer did not witness any evidence of impaired driving. *State v. Satter*, 766 N.W.2d 153, 158 (S.D. 2009). There, an unnamed tipster approached an officer in person and pointed out a vehicle whose occupants he said possessed open containers and were drinking beer. *Id.* at 154. In upholding the stop, the court defended the officer's choice to pursue the driver immediately, rather than stay and ascertain the tipster's identity. "[T]he officer faced a dilemma of either: 1) obtaining the tipster's identifying information, then attempting to track down the van,

driven by a potentially intoxicated driver, in city traffic; or 2) he could follow the van immediately." *Id.* at 157. The court also noted that the tipster's observation of the *act* of drinking and the possibility of further consumption contained sufficient signs of intoxication to justify a traffic stop. *Id.* at 158; *see also Lamb v. State*, 604 S.E.2d 207, 208 (Ga. Ct. App. 2004) (upholding a traffic stop based on a tip from a bartender who told authorities by phone "that a man who was too intoxicated to drive was leaving the restaurant, and that he would not let her call him a cab"); *State v. Amelio*, 962 A.2d 498, 502 (N.J. 2008) (upholding a stop based on a tip containing a teenager's bare assertion defendant was "drunk" and observing that " 'drunk' has a commonly understood meaning and the signs of drunkenness are matters of common knowledge and experience"); *State v. Lamb*, 720 A.2d 1101, 1102–06 (Vt. 1998) (holding that a traffic stop was "more than" justified where a 911 caller reported that the defendant was "very upset and intoxicated and was leaving a residence" because of the "impossibility that such information could have been supplied by anyone but a knowledgeable insider").

This is not a case like *Florida v. J.L.*, 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000). In that case, a tipster provided only a description of an individual and his location and the allegation that the individual had a gun. *Id.* at 268, 120 S. Ct. at 1377, 146 L. Ed. 2d at 258–59. There was "no predictive information" and the tip involved "concealed criminal activity." *Id.* at 271–72, 120 S. Ct. at 1379, 146 L. Ed. 2d at 260–61. Here, by contrast, the tip involved a description of criminal activity taking place out in the open—i.e., intoxicated individuals at curbside in downtown Doon getting into a vehicle—and the

tipster added predictive information, such as when the vehicle was leaving and where it was going (Rock Valley).

As we have already pointed out, this case is functionally similar to the erratic driving cases, which the majority agrees were correctly decided. The only difference is that the criminal activity involved intoxicated individuals getting into a car to drive away instead of erratic driving.

What *J.L.* emphasizes is that when the criminal activity is concealed, the tip must provide more than just a description of the alleged criminal and his location. There must be further detail demonstrating the tipster's basis for knowledge of the criminal activity. But when the criminal activity is out in the open, firsthand contemporaneous observations are sufficient. The reality is that here we have publicly observable criminal activity, *plus* additional verifiable details provided by the caller that would indicate the caller likely had been observing the situation for some time (i.e., in the bar) before it moved onto the public curbside—which in fact was the case.[2]

By contrast, *Harris v. Commonwealth*, 668 S.E.2d 141 (Va. 2008), cited by the majority, involved neither of these factors. The tip was merely of an "intoxicated driver" and his name, vehicle, location, and direction. *Id.* at 144. Unlike here, the caller did not relay firsthand, contemporaneous observations, such as the description of a group of

---

[2]The majority says, "Any person at the bar would be able to surmise that at 11:20 p.m. on a Wednesday night, these four well-known businessmen from Rock Valley would most likely be going home at that time of night." I think this proves the point I am making, that the details indicate the caller had been observing these individuals inside "at the bar" and now was seeing them get into the car drunk. It is possible, of course, that these persons had not been consuming a significant quantity of alcoholic beverages (despite being in a bar until 11:21 p.m.) and the tipster was lying about their intoxicated condition. But the law only requires reasonable suspicion.

"drunks" first "sitting on curbside" in downtown Doon and then "opening their doors to get the last passengers in." Further, the caller in *Harris* provided no details that demonstrated intimate knowledge, whereas here the caller advised the dispatcher where these people worked and lived, where they planned to go after they got into the car, and what they had been doing that day. *Id.*; *see also Alabama v. White*, 496 U.S. 325, 332, 110 S. Ct. 2412, 2417, 110 L. Ed. 2d 301, 310 (1990) (emphasizing that the tipster had provided predictive information that demonstrated intimate familiarity).

Third, the tip came in the form of a 911 call. The risk that a 911 call would be used purely to harass someone rather than to report a potential crime seems to me a decreasing one. By statute and administrative regulations, Iowa emergency call centers use "enhanced 911" which "[a]utomatically provides voice, displays the name, address or location, and telephone number of an incoming 911 call and public safety agency servicing the location." Iowa Code § 34A.2(5)(*b*) (2009); *see also* Iowa Admin. Code r. 605—10.7 (providing for implementation of enhanced wireless 911 service). All of Iowa's ninety-nine counties have implemented enhanced wireless 911, according to the Iowa Homeland Security and Emergency Management Division. *See* Iowa Homeland Security & Emergency Management, *Enhanced 9–1–1 (E–911)*, http://www.iowahomelandsecurity.org/programs/E_911.html (last visited Jun. 20, 2013). "[T]he State stands on firm constitutional ground when it treats the anonymous 9–1–1 caller in the same fashion as it would an identified citizen informant who alerts the police to an emergent situation." *State v. Golotta*, 837 A.2d 359, 367, 373 (N.J. 2003) (upholding a DUI traffic stop based on a 911 call reporting erratic driving and noting such calls are not truly anonymous). I think the average

citizen has developed an understanding from watching television that 911 calls are frequently traceable. In fact, the tipster was tracked down here.

Not only are 911 tipsters generally identifiable, they are criminally liable if they knowingly make false tips. *See* Iowa Code § 718.6(2) ("A person who telephones an emergency 911 communications center knowing that the person is not reporting an emergency or otherwise needing emergency information or assistance commits a simple misdemeanor."); *see also id.* § 718.6(1) (providing that knowingly reporting false information about a felony or serious or aggravated misdemeanor is itself a serious misdemeanor). Calling 911 is no way to make a false report and get away with it. In this sense, 911 callers have the incentive to provide reliable information or else face criminal consequences. *See Golotta,* 837 A.2d at 367 (noting that "it is hard to conceive that a person would place himself or herself at risk of a criminal charge by making" a phony 911 call (internal quotation marks omitted)).

The majority says, "[W]e commend the dispatcher who took the 911 call." I don't follow what the majority means by this statement. The entire thrust of the majority opinion is that the dispatcher did *not* do an adequate job, and should have kept the caller on the line longer and asked additional questions. I disagree with imposing this burden on 911 operators and would uphold the stop.

For the foregoing reasons, I respectfully dissent.

Cady, C.J., and Waterman, J., join this dissent.