# IN THE COURT OF APPEALS OF IOWA

No. 22-0066
Filed August 30, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOHN ANTHONY RAPENSKE,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl, Judge.

John Rapenske appeals his conviction for operating while intoxicated, second offense, challenging the denial of his motion to suppress evidence. **AFFIRMED.**

Becky Wilson of Becky E. Wilson, Attorney, PLLC, Iowa Falls, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered by Ahlers, P.J., Badding, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**AHLERS, Presiding Judge.**

This case calls on us to answer the question of whether a second-hand report of erratic driving from a citizen to law enforcement can serve as the basis for a traffic stop. Here's how the issue arises.

A woman driving a vehicle witnessed the vehicle in front of hers being driven erratically. She reported the erratic driving to her husband, to whom she was talking on her cell phone, and described the vehicle, license plate number, location, and direction of travel. She asked her husband to call law enforcement for her, which he did. The husband spoke to a law enforcement dispatcher. He informed the dispatcher that the vehicle traveling in front of his wife was driving erratically; identified the road upon which the vehicle was traveling; described the vehicle by make, model, color, and license plate number; reported that it was "swerving all over the road," speeding, pulling out in front of other vehicles, and "hit the shoulder a bunch of times"; revealed that his wife was following the vehicle; described the intersection where the vehicle just turned; described the direction of travel; and provided his name.

Based on the information provided, a law enforcement officer located the vehicle and stopped it. The officer did not observe any driving irregularities before stopping the vehicle. The stop was based entirely on the information provided by the husband. The stop revealed John Rapenske as the driver. The officer's interactions with Rapenske led to further investigation and eventually to a charge of operating while intoxicated, second offense, in violation of Iowa Code section 321J.2 (2019).

Rapenske filed a pretrial motion to suppress, seeking to suppress all evidence following the stop of his vehicle based on the claim that the stop was not based on reasonable suspicion and thus violated his rights under the Fourth Amendment to the United States Constitution.[1]  Following a hearing, the district court denied the motion.  Rapenske was later found guilty of the crime and sentenced.  He appeals, asserting that his motion to suppress should have been granted.  Because he challenges the denial of his suppression motion on constitutional grounds, our review is de novo.  *See State v. Sallis*, 981 N.W.2d 336, 344 (Iowa 2022).

If a law enforcement officer has reasonable suspicion that a criminal act has occurred or is occurring, the officer is permitted to make a brief investigatory stop of an individual or vehicle without running afoul of the Fourth Amendment.  *Id.*  The purpose of such an investigatory stop is to allow the officer to confirm or dispel the suspicion of criminal activity.  *Id.*  Because an investigatory stop results in only a brief detention, the stop is permitted on "considerably less than proof of wrongdoing by a preponderance of the evidence."  *Id.* (quoting *State v. Baker*, 925 N.W.2d 602, 610 (Iowa 2019)).  Whether there is reasonable suspicion justifying an investigatory stop is determined by considering the totality of the circumstances confronting the officer, including all information available to the officer when the decision to stop is made.  *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002).

---

[1] Rapenske's motion challenged the stop under the search-and-seizure provisions of both the federal and Iowa constitutions.  On appeal, he limits his challenge to the federal constitution, so we limit our discussion accordingly.

Even an anonymous tip to law enforcement provides reasonable suspicion for an investigatory stop if the information provided is sufficiently reliable under the totality of the circumstances. *Navarette v. California*, 572 U.S. 393, 397 (2014); *State v. Kooima*, 833 N.W.2d 202, 206 (Iowa 2013). A tip has the required indicia of reliability when the anonymous tipster provides information that the tipster personally observed erratic driving open to public view. *Kooima*, 833 N.W.2d at 208 (collecting cases). When it is a citizen calling in the tip, the test for reliability is relaxed, as there is a "rebuttable presumption that 'information imparted by a citizen informant is generally reliable.'" *State v. Walshire*, 634 N.W.2d 625, 629 (Iowa 2001) (quoting *State v. Niehaus*, 452 N.W.2d 184, 189 (Iowa 1990)). And, when the citizen tipster is known rather than anonymous, the case for reliability of the information is even stronger because the tipster could be held accountable if the information provided turns out to be false. *Adams v. Williams*, 407 U.S. 143, 146–47 (1972); *see also State v. Campbell*, No. 13-0558, 2014 WL 1494906, at *2 (Iowa Ct. App. Apr. 16, 2014).

Rapenske does not seem to disagree with the principles articulated above or the notion that the stop of his vehicle would have been lawful had the information used as the basis for the stop been reported by the actual witness (i.e., the woman following him). The wrinkle here that causes Rapenske to take umbrage with the stop is that the information supporting the stop was second-hand information provided by someone who did not personally witness his driving. He argues that relying on information from a caller who was merely passing on information from an eyewitness negates the reliability of the information so as to make the stop unreasonable. We disagree.

Although the parties cite no Iowa cases directly addressing this issue—and we have not found any with our own research—at least two other states have addressed it. In *State v. Bishop*, the Idaho Court of Appeals confronted a similar issue. No. 32805, 2007 WL 4245446 (Idaho Ct. App. Dec. 4, 2007). Two carnival workers working at a city festival reported to a city official that a man, later identified as Marvin Bishop, had just offered to sell them methamphetamine. *Id.* at *1. The workers asked the city official to contact police, which he did. *Id.* The city official described Bishop and reported the direction Bishop was heading and the street he was on. *Id.* The city official followed Bishop and gave an update to the officer while the officer was en route. *Id.* The officer arrived and found Bishop in the location described, and the city official identified him. *Id.* The interaction eventually led to seizure of Bishop and a search that yielded a baggie of methamphetamine. *Id.* Bishop sought to suppress the results of the search, in part, because the city official did not have firsthand knowledge of the alleged offer to sell methamphetamine. *Id.* at *3. The court rejected this argument with these observations:

> [The city official] did not possess any first-hand information about what transpired; he was merely a conduit through which the information was passed. While [the city official]'s second-hand information does not show the reliability or veracity of the informants, the two carnival workers with first-hand information were not anonymous tipsters. A known citizen is one who provides facts from which his or her identity can be readily ascertained. *State v. Van Dorne,* 965, 88 P.3d 780, 784 (Idaho Ct. App. 2004). The two carnival workers communicated with [the city official] personally in a face-to-face encounter. Although it is not obvious why they reported the alleged incident to [the city official] instead of contacting the police directly themselves, they asked him to report the incident to the police for them, directly engaging [him] as a city official. They openly identified themselves as employees of the carnival, subjecting themselves to criminal sanctions if their report was

discovered to be false. There is no indication that they tried to conceal their identities or remain anonymous in any way; instead their identities were readily ascertainable.

*Id.* (footnote omitted). The court went on to conclude that the information conveyed by the carnival workers as known citizen informants established the reliability and veracity of the information, even though the information was conveyed through the city official. *Id.* at *4. The seizure of Bishop was found to be constitutional.[2] *Id.*

In a more factually similar case, the Ohio Court of Appeals recently upheld a traffic stop based on second-hand information. In *State v. Tincher*, a woman called 911 to report a possible drunk driver. No. 21CA0060-M, 2022 WL 1618917, at *1 (Ohio Ct. App. May 23, 2022). She identified herself by describing her occupation, and her name and phone number were known to the 911 dispatcher because the dispatcher's equipment displayed that information. *Id.* The caller reported seeing a woman (later identified as Allison Tincher) "stumbling all over the place" after exiting a bar and then driving away in her car. *Id.* The caller gave the name and location of the bar, the license plate number of Tincher's car, the road on which the car was traveling, and the direction of travel. *Id.* After the call ended, the caller called back to update the 911 dispatcher on Tincher's location (i.e., a fast-food drive-thru). *Id.* The dispatcher notified an officer, who found the woman in the fast-food drive-thru as reported. *Id.* The officer waited for Tincher to drive out of the drive-thru but did not observe any traffic infractions. *Id.* The officer stopped the vehicle based solely on the tip from the 911 caller. *Id.* It turned

---

[2] Although the court found the seizure of Bishop to be within constitutional limits, it ruled the subsequent frisk to be unconstitutional. *Bishop*, 2007 WL 4245446, at *5–6. Rapenske does not challenge the actions of the officer after he was seized via the traffic stop.

out that the caller did not witness the events reported. *Id.* Rather, the caller and her boyfriend were talking on their cell phones when the boyfriend saw Tincher exit the bar, stumble, and get into her car. *Id.* The girlfriend ended the call so she could call 911, and her boyfriend sent her text messages with additional information that the girlfriend relayed to the dispatcher. *Id.* The Ohio Court of Appeals found the stop constitutional despite the fact that the eyewitness was not the reporting party. *Id.* at *4. In doing so, the court highlighted the "highly reliable" nature of information provided by identified citizen informants. *Id.* at *2. The court also noted that the caller's willingness to use the 911 emergency system was an indicium of reliability because the caller could be held accountable for providing false information. *Id.* at *4. The immediacy of the tip and the fact it described a presently occurring situation also gave the tip a further degree of trustworthiness. *Id.* Further support for the reliability of the information was the fact that the caller was not motivated by dishonest or questionable goals, but by the desire to eliminate risk to the public. *Id.*

We find the reasoning in *Bishop* and *Tincher* persuasive and consistent with the principles articulated in our cases. Here, the 911 caller identified himself, reported erratic driving, and informed the dispatcher that he was passing along information from his wife who was following the driver.[3] The information described

---

[3] As part of its analysis, the Ohio Court of Appeals in *Tincher* noted that the trial court highlighted the fact that the caller did not disclose that she was passing on information from the eyewitness when the trial court concluded the tip was not reliable. 2022 WL 1618917, at *3. The Ohio Court of Appeals rejected that detail as a basis for finding the tip unreliable, noting that analysis of the reasonableness of an investigatory stop requires consideration of the circumstances known to the dispatcher and communicated to the officer. *Id.* Here, the caller did inform the dispatcher that he was passing on information from his wife, who was following

a presently occurring situation. A great deal of detail was provided, including the make, model, color, and license plate number of the vehicle. The information also included a current location and direction of travel. While the investigating officer was unable to corroborate any inculpatory information (e.g., erratic driving), most other information was corroborated when the officer found the described vehicle in the described location. *See Walshire*, 634 N.W.2d at 628 ("Although the police in the present case did not verify any inculpatory conduct by the defendant, they verified the caller's description of the defendant's vehicle, its license number, and its general location."). Finally, there is no indication that the wife or her husband were motivated by anything other than the desire to get an unsafe driver off the roads.

Finally, we address Rapenske's argument that the stop was unconstitutional because the information passed along by the husband caller did not exactly match the information supplied to him by the eyewitness wife. Rapenske contends that discrepancies between the wife's recollection of events[4] and the details the husband provided to the dispatcher negate the reliability of the tip. We disagree for two reasons. First, the relevant inquiry in determining the reasonableness of the stop is the information available to the officer at the time of

---

Rapenske's vehicle. In our view, this factual distinction does not negate the conclusion reached in *Tincher*. The fact that the dispatcher here received more complete information than the dispatcher in *Tincher* does not undermine the reliability of the tip, especially since both the caller and eyewitness were identified by name or description (i.e., the caller's wife). *See Adams*, 407 U.S. at 146–47 (noting that information from a known informant creates "a stronger case" for an investigatory stop than anonymous tips).

[4] The wife gave a written statement the night of the incident, testified at the suppression hearing, and testified at trial. Rapenske highlights claimed inconsistencies in those three recitals of the wife's recollection of events.

the stop—in this instance, the information the husband supplied to the dispatcher. *See Kreps*, 650 N.W.2d at 642 ("'[T]he question of whether reasonable suspicion exists to stop a vehicle must be measured by current knowledge,' that is, at the moment the stop is made and not hindsight." (quoting *Lewis v. State*, 504 S.E.2d 732, 734 (Ga. Ct. App. 1998))). The information supplied to the dispatcher and made known to the officer warranted the stop. Second, the nuanced discrepancies highlighted by Rapenske between what the husband reported to dispatch and what the wife supplied in her written statement and both times she testified do not negate the reliability of the tip. Those discrepancies are a distinction without a difference. Each recital by the wife gave information of erratic driving. Even had the husband repeated any version of events described in the wife's statement or testimony verbatim, the erratic driving being described would have justified an investigatory stop. So, the fact that the husband may have described the events in different terms and degrees than the wife doesn't negate the reliability of the tip.

Under the totality of the circumstances, we conclude the officer had reasonable suspicion to stop Rapenske's vehicle. The fact the information ultimately supplied to the officer came from the husband passing along information supplied by his eyewitness wife does not undermine the reliability of the information in this instance. The stop did not violate Rapenske's Fourth Amendment rights. The district court was correct to deny Rapenske's motion to suppress.

**AFFIRMED.**