# IN THE COURT OF APPEALS OF IOWA

No. 15-1332
Filed July 27, 2016

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**COLLIN ALEXANDER RUHS,**
　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Jeffrey L. Harris, District Associate Judge.

A criminal defendant appeals the district court's denial of his motion to suppress evidence. **AFFIRMED.**

David W. Hosack and Carter J. Stevens of Roberts, Stevens, Prendergast & Guthrie, P.L.L.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

Collin Ruhs appeals the district court's denial of his untimely motion to suppress evidence. He argues good cause existed to justify the untimely filing of his motion and evidence related to his arrest for operating while intoxicated should have been suppressed because the officer who stopped his vehicle did not have reasonable suspicion to do so. We decline to affirm the district court on the basis Ruhs waived the grounds for his motion to suppress because the State failed to urge the district court to find the motion untimely. We affirm the district court's ruling on the basis reasonable suspicion existed to justify the stop of Ruhs's vehicle.

## I. Background Facts and Proceedings

At approximately 1:00 a.m. on November 8, 2014, Waterloo police officers Tyler Brownell and Ryan Muhlenbruch were dispatched to a local bar at the request of the bartender. When Officer Brownell arrived, he parked next to a maroon truck. As Officer Brownell got out of his vehicle and began walking towards the bar, Ruhs was getting in the driver's seat of the maroon truck. The officer saw Ruhs but did not know who he was. As Officer Brownell approached the bar, he noticed the bartender was attempting to direct his attention to something. She was waving her arms and pointing out the window, but he did not understand what she was trying to communicate. Officer Brownell went inside and asked the bartender what was going on. She told him that "if [he] wanted to save someone's life," he needed to go stop the man who had just left in the maroon truck. Officer Brownell asked if the man was drunk, and the bartender said he was.

Officer Brownell advised dispatch of a drunk man who had left the bar in a maroon truck—he incorrectly identified the truck as a Chevrolet Silverado when, in fact, it was a GMC Sierra—and then set out to locate the truck himself. Officer Brownell soon observed the truck being driven in a manner that led him to believe the driver was intoxicated. Officer Brownell stopped the truck and was joined by Officer Muhlenbruch. Ruhs admitted to the officers he had just left the bar. The officers asked Ruhs to perform standard field sobriety tests; Ruhs did not do well. He failed the horizontal gaze nystagmus test. He then declined to participate in the walk-and-turn test, stating he did not think he could complete the test because it was too windy and because he had bad knees as a result of having been shot in both knees. Ruhs was handcuffed and taken to jail. At the jail, Ruhs told the officers he was drunk and eventually consented to provide a breath sample, which showed he had a blood alcohol content of .193.

On December 10, 2014, the State filed a trial information charging Ruhs with one count of operating while intoxicated, first offense, in violation of Iowa Code section 321J.2 (2013). Ruhs filed a written arraignment, plea of not guilty, and demand for speedy trial on December 17, 2014. Sixty-one days later, on February 16, 2015, Ruhs filed a motion to suppress evidence on the basis the officers' actions on November 8, 2014, constituted a violation of his rights under both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution.

The district court held a hearing on the motion to suppress on March 11, 2015. On March 31, 2015, the district court denied Ruhs's motion. In its written order, the district court stated:

> The court first notes that the defendant's Motion to Suppress was not timely filed pursuant to rule 2.11(4) of the Iowa Rules of Criminal Procedure. The file reflects that the defendant filed a written arraignment on December 17, 2014. The defendant's Motion to Suppress was filed February 16, 2015, more than 40 days after the arraignment. No good cause was shown or asserted by the defendant for the delay in filing the Motion to Suppress. Although the Motion to Suppress was untimely, the court did not note that fact until after the hearing was completed.

The district court also ultimately concluded Ruhs's constitutional rights were not violated because the information provided to Officer Brownell by the bartender was sufficient to establish reasonable suspicion for the investigatory stop. The district court found the untimeliness of the motion to suppress evidence to be "an additional ground to overrule the defendant's motion."

Ruhs filed a motion to enlarge or amend on April 7, 2015, seeking to offer good cause for the untimeliness. Ruhs argued he "had no opportunity to present good cause as the Court requested no such showing," and asserted:

> That had [he] been allowed to offer good cause, [he] would have stated as follows:
> a. That [Ruhs] requested all video tapes concerning his vehicle stop through a DOT Subpoena dated November 17, 2014;
> b. That [Ruhs] received one video tape on or about November 24, 2014;
> c. That [Ruhs] inquired, with the Waterloo Police Department, as to whether there were any other video tapes;
> d. That it was only after a second request that all video tapes were provided to the Defendant;
> e. That the video tapes were used in support of [Ruhs]'s motion to suppress;
> f. That [Ruhs]'s attorney alerted the assistant county attorney . . . about this . . . reason for the untimely motion; and
> g. That [the] assistant county attorney . . . did not resist filing the untimely motion late.

The district court denied Ruhs's motion to amend or enlarge on April 9, 2015, stating:

> It is the defendant's responsibility to seek and obtain a court order extending the deadline for the filing [of] pretrial motions when the grounds for the filing of such a motion are apparent. No motion was filed by the defendant seeking an extension of time to file pretrial motions even though the grounds for such a motion were apparent prior to the deadline.

Ruhs waived his right to a jury trial and was found guilty on May 27, 2015, after a trial on the minutes. On July 10, 2015, he was sentenced to a term of incarceration not to exceed ninety days, with all but four days suspended. Ruhs was also sentenced to twelve months of probation plus applicable fines, surcharges, and costs.

Ruhs now appeals the denial of his motion to suppress.

## II. Standard of Review

"We review the district court's good cause determination regarding the timeliness of a motion to suppress for an abuse of discretion." *State v. Ortiz*, 766 N.W.2d 244, 249 (Iowa 2009). "We will not find an abuse of discretion unless the trial court's action was clearly untenable or unreasonable." *State v. Eldridge*, 590 N.W.2d 734, 736 (Iowa Ct. App. 1999).

With respect to Ruhs's claim the district court should have granted his motion to suppress on federal and state constitutional grounds, our review is de novo. *See State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007). In doing so, we consider the entire record and independently evaluate the totality of the circumstances. *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *Id.*

## III. Discussion

Ruhs argues neither reason given by the district court for denying his motion to suppress evidence was justified. First, he argues his motion should not have been denied for untimeliness because good cause existed to excuse its lateness. Second, he argues his motion should not have been denied on the merits because the officers did not have reasonable suspicion to stop his vehicle.

### A. Untimeliness

The Iowa Rules of Criminal Procedure require that motions to suppress evidence be raised prior to trial. *See* Iowa R. Crim. P. 2.11(2). More specifically, the rules state that a motion to suppress evidence "shall be filed . . . no later than 40 days after arraignment." Iowa R. Crim. P. 2.11(4). "Absent a showing of good cause, an untimely motion to suppress constitutes waiver of the grounds forming the basis for the motion." *Eldridge*, 590 N.W.2d at 736; *see also* Iowa R. Crim. P. 2.11(3). "What constitutes good cause for an untimely motion to suppress is a discretionary decision of the trial court." *Eldridge*, 590 N.W.2d at 736. However, although the district court has the discretion to find a defendant waived the grounds for a motion to suppress, "[t]he preclusive sanctions of rule [2.11(3)] should not be imposed lightly." *Id.* The district court should consider both the defendant's stated reasons for failing to comply with the rules and whether the State was prejudiced as a result, and should weigh the defendant's interest in a full and fair trial against the State's interest in avoiding surprise and unnecessary delays. *Id.*

As the district court noted in its order denying the motion, Ruhs ignored the untimeliness issue when filing his motion. Since the State also failed to raise

the issue, the district court was left to discover the problem on its own following the hearing. By failing to assert good cause, Ruhs waived the basis for his motion to suppress. *See State v. Terry*, 569 N.W.2d 364, 368 (Iowa 1997) ("[The defendant] filed the suppression motion fifty-seven days after his arraignment. The motion was late and [the defendant] made no effort to show good cause to excuse the untimely filing. For these reasons the motion was waived."). However, as the Iowa Supreme Court stated in *DeVoss v. State,* "Because error preservation is based on fairness, we think both parties should be bound by the rule." 648 N.W.2d 56, 63 (Iowa 2002) (explaining "one party should not ambush another by raising issues on appeal, which that party did not raise in the district court. To that end, we hold that we will not consider a substantive or procedural issue for the first time on appeal, even though such issue might be the *only* ground available to uphold a district court ruling"). Here, the district court ruled on the untimeliness issue even though it was not urged to do so by the State. The State also did not file a resistance to Ruhs's post-hearing efforts to show good cause.[1] Therefore, although the district court found the motion was untimely before it proceeded to rule on the merits, we do not affirm on untimeliness grounds. Instead, we consider the merits of Ruhs's motion to suppress evidence.

---

[1] Ruhs's motion to enlarge or amend was not an appropriate vehicle in which to assert good cause for the first time. *See In re Marriage of Bolick*, 539 N.W.2d 357, 361 (Iowa 1995) ("Motions under [Iowa Rule of Civil Procedure 1.904(2)] are permitted so that courts may enlarge or modify findings based on evidence already in the record. They are not vehicles for parties to retry issues based on new facts.").

**B.** **Reasonable Suspicion for Stop**

We find the district court correctly determined there was reasonable suspicion to justify the officer's stop of Ruhs's truck.

Police need only reasonable suspicion to justify investigatory stops. *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004). "When a person challenges a stop on the basis that reasonable suspicion did not exist, the State must show by a preponderance of the evidence that the stopping officer had specific and articulable facts, . . . together with rational inferences from those facts, to reasonably believe criminal activity may have occurred." *Id.* "Whether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the circumstances confronting a police office, including all information available to the officer at the time the decision to stop is made." *State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002). "A good test of . . . a founded suspicion is that 'the possibility of criminal conduct was strong enough that, upon an objective appraisal of the situation, we would be critical of the officers had they let the event pass without investigation.'" *Id.* (quoting 4 Wayne R. LaFave, *Search & Seizure* § 9.4(b), at 148 (3d ed. 1996)).

The district court found, "In this case it would have been a dereliction of Officer Brownell's duty to allow the alleged intoxicated driver described by [the bartender] to operate his vehicle on a public roadway without confirming or dispelling the suspicion of criminal activity." We agree.

In arguing the officers lacked reasonable suspicion to justify the investigatory stop, Ruhs urges us to find the bartender's information unreliable under *State v. Kooima*, 833 N.W.2d 202, 210–11 (Iowa 2013). In *Kooima*, our

supreme court considered an investigatory stop based upon an anonymous tip—an unidentified caller told a 911 dispatcher he saw a group of drunk men getting into a vehicle and assumed they would be headed through town—and concluded the nature of the tip did not justify the stop:

> [W]e hold a bare assertion by an anonymous tipster, without relaying to the police a personal observation of erratic driving, other facts to establish the driver is intoxicated, or details not available to the general public as to the defendant's future actions does not have the requisite indicia of reliability to justify an investigatory stop.

833 N.W.2d at 210–11. Ruhs argues the information available to Officer Brownell in this case is comparable to that at issue in *Kooima*—he characterizes the bartender's statements as "bare assertions of operating while intoxicated with no basis for such information," "which amounted to nothing more than a hunch and had no indicia of reliability."

*Kooima* has been distinguished recently by two different panels of our court in *State v. Hagge*, No. 15-0652, 2015 WL 8364226, at *2–3 (Iowa Ct. App. Dec. 9, 2015) and *State v. Campbell*, No. 13-0558, 2014 WL 1494906, at *1–2 (Iowa Ct. App. Apr. 16, 2014). In both *Hagge* and *Campbell*, like in *Kooima*, a citizen called 911 to report a suspected drunk driver. *Hagge*, 2015 WL 8364226, at *1; *Campbell*, 2014 WL 1494906, at *1. However, the tips in *Hagge* and *Campbell* were deemed to be inherently more reliable because the tipsters were not anonymous. *Hagge*, 2015 WL 8364226, at *2 ("Unlike *Kooima*, the case before this court does not involve an anonymous tipster. In addition to identifying himself, the 911 caller gave his location and the reason he was able to observe [the defendant]'s intoxication. Information imparted by a citizen informant is generally considered reliable." (citation omitted)); *Campbell*, 2014 WL 1494906,

at *2 ("The situation before us today differs from *Kooima* in one important respect. The tipster in this case was not anonymous, but rather known and remained available until the police arrived so she could be held accountable for the information provided. Tips from known informants are inherently more reliable for this very reason." (footnote omitted)). Ruhs acknowledges *Campbell*, but he argues his situation is distinguishable and Officer Brownell was obligated to question the bartender further about the source of her information before he could rely upon it. We disagree.

Officer Brownell visited the bar at the request of the bartender, who provided information to the officer in a face-to-face conversation about her personal observations that the man who had just driven away in the maroon truck was drunk. Moments earlier, Officer Brownell had personally observed the man getting into the driver's seat of the maroon truck outside the bar. The officer then was able to corroborate the bartender's information by his observation of the manner the truck was driven, a fact which distinguishes this case from *Kooima.* The information provided to Officer Brownell by the bartender was reliable and, particularly along with the officer's personal observations, established reasonable suspicion sufficient to justify the investigatory stop of Ruhs's truck.

**AFFIRMED.**