**IN THE COURT OF APPEALS OF IOWA**

No. 16-0129
Filed April 19, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARK L. KEMP,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

        The defendant appeals his convictions for possession with intent to deliver crack cocaine, interference with official acts causing injury, and possession of marijuana.  **AFFIRMED.**

        Jesse A. Macro Jr. of Macro & Kozlowski, LLP, West Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

        Considered   by   Potterfield,   P.J.,   and   Doyle   and   Tabor,   JJ.

**POTTERFIELD, Presiding Judge.**

Mark Leon Kemp appeals his convictions after a trial to the bench for possession with intent to deliver crack cocaine, interference with official acts causing injury,[1] and possession of marijuana. Specifically, he argues the evidence used by the State to secure his convictions was obtained without reasonable suspicion, in violation of article 1, section 8 of the Iowa Constitution and the Fourth Amendment of the U.S. Constitution.[2] He also argues his counsel was ineffective. We affirm.

**I. Background Facts and Proceedings.**

On February 27, 2015, Kemp was charged by trial information with the following: one count of possession of a controlled substance with intent to deliver, in violation of Iowa Code section 124.401(1)(c)(3) (2015); one count of failure to possess a tax stamp, in violation of sections 453B.3 and 453B.12; one count of interference with official acts causing injury, in violation of section 719.1;

---

[1] Kemp's appeal involves only the drug counts; he makes no argument regarding the interference conviction.

[2] Kemp does not offer an independent analysis under article I, section 8 of the Iowa Constitution to address his constitutional claims. Therefore, we proceed using the federal analytical framework under the Fourth Amendment. *See State v. Carter*, 696 N.W.2d 31, 37 (Iowa 2005) ("Because Carter has not asserted and we have not found a basis to distinguish the protection afforded by the Iowa Constitution from those afforded by the federal constitution under the facts of this case, our analysis applies equally to both the state and federal grounds."); *see also State v. Tyler*, 830 N.W.2d 288, 299 (Iowa 2013) ("We have repeatedly stated when a party makes claims under parallel provisions of both the Iowa and Federal Constitutions but does not suggest an independent state constitutional standard, we apply the federal standards, but do not necessarily apply them in the same way as the United States Supreme Court."); *Reilly v. Iowa Dist. Ct.*, 783 N.W.2d 490, 494 (Iowa 2010) ("Because Reilly has not advanced a standard for interpreting the due process clause under the Iowa Constitution different from its federal constitutional counterpart, we will apply the general principles as outlined by the United States Supreme Court.").

and, one count of possession of a controlled substance, in violation of section 124.401.

On March 15, 2015, Kemp waived formal arraignment and pled not guilty to the above charges. On May 7, 2015, Kemp filed a motion to suppress alleging the evidence supporting the three drug counts was discovered in an illegal pat-down search. Both parties filed written briefs, and a suppression hearing was held on July 7, 2015.

At the hearing, Officers Morgan and Becker testified about their encounter with Kemp. On or about January 23, 2015, Becker received an anonymous tip about potential drug-trafficking activity involving a specifically described car. The tipster allegedly identified an orange Dodge Avenger, with a specific license plate number, driven by a man matching Kemp's physical description in his forties or fifties, who was engaged in activities consistent with narcotic sales. The tipster also disclosed drugs were seen in the vehicle. At 1:30 a.m. on January 24, Becker noticed an orange Dodge Avenger parked in an empty parking lot at a closed business under a "No Parking" sign. The car was located adjacent to a bar known by the police for gun and drug activity. The driver's seat was empty, and a woman was sitting alone in the passenger seat. Upon further investigation, the police verified the car's license plate number matched the information from the tipster. The district court made the following additional factual findings regarding the officers' testimony:

> At the time the officers approached the vehicle the lone occupant was Rhonda Claiborne, the owner of the vehicle. Claiborne was sitting in the front passenger seat of the car at that time. Morgan, while speaking to Claiborne, noticed several parts of plastic baggies sticking out of the center console of the car, which

he recognized as baggies used in the drug industry. As this conversation was occurring, defendant, Mark Kemp, approached the vehicle by Becker and inquired why the officers were there. Kemp indicated to Becker that he came to the bar in the orange Dodge. Becker at that time requested identification from Kemp. Kemp was unable to provide any identification. Becker also testified that Kemp fit the description of the individual given to him by the concerned citizen.

Becker then conducted a pat-down search of Kemp out of a concern that he posed a threat to the officers' safety. During the pat-down search, Becker noticed that Kemp was making furtive movements consistent with an individual trying to conceal items. Becker also felt a substance in Kemp's right pocket consistent with small bundles of crack cocaine. Becker testified that he did not reach into the pocket at that time. He summoned Morgan to help detain Kemp, who then attempted to flee by jumping over the rear of the car. The officers subdued him and ultimately placed Kemp under arrest. Crack cocaine and marijuana were discovered in Kemp's right, front pocket after he was placed under arrest.

In its September 13, 2015 order, the district court denied Kemp's motion to suppress on both the procedural ground and on the merits. First, the court denied Kemp's motion "for his failure to file the motion within 40 days of his arraignment in violation of Iowa Rule of Criminal Procedure 2.11(4) and he failed to present any grounds that would constitute good cause to excuse the late filing." Second, the court denied the motion on the merits, finding the search was constitutional under both the federal and state constitutions. A bench trial was held on the minutes of testimony, and the court found Kemp guilty of possession

of crack cocaine with intent to deliver, interference with official acts causing injury, and possession of marijuana. Kemp appeals.

## II. Standard of Review.

"We review the district court's good cause determination regarding the timeliness of a motion to suppress for an abuse of discretion." *State v. Ortiz*, 766 N.W.2d 244, 249 (Iowa 2009); *State v. Ruhs*, 885 N.W.2d 822, 825 (Iowa Ct. App. 2016). "We will not find an abuse of discretion unless the trial court's action was clearly untenable or unreasonable." *State v. Eldridge*, 590 N.W.2d 734, 736 (Iowa Ct. App. 1999).

Claims of ineffective assistance of counsel are reviewed de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

We review Kemp's claim the district court should have granted his motion to suppress on federal and state constitutional grounds de novo. *See State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007). In doing so, we consider the entire record and independently evaluate the totality of the circumstances. *See State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *Id.*

## III. Discussion.

Kemp claims the trial court erred in denying his motion to suppress and his trial counsel was ineffective for failing to timely file the motion to suppress.

### A. Motion to Suppress.

The Iowa Rules of Criminal Procedure require that motion-to-suppress evidence be presented prior to trial. *See* Iowa R. Crim. P. 2.11(2). Specifically, a

motion to suppress "shall be filed . . . no later than 40 days after arraignment." Iowa R. Crim. P. 2.11(4). "Absent a showing of good cause, an untimely motion to suppress constitutes waiver of the grounds forming the basis for the motion." *Eldridge*, 590 N.W.2d at 736; *Ruhs*, 885 N.W.2d at 825; *see also* Iowa R. Crim. P. 2.11(3). "What constitutes good cause for an untimely motion to suppress is a discretionary decision of the trial court." *Eldridge*, 590 N.W.2d at 736; *Ruhs*, 885 N.W.2d at 825. "The district court should consider both the defendant's stated reasons for failing to comply with the rules and whether the State was prejudiced as a result, and should weigh the defendant's interest in a full and fair trial against the State's interest in avoiding surprise and unnecessary delays." *Ruhs*, 885 N.W.2d at 826.

Kemp was arraigned on March 13, 2015, and he did not file the motion to suppress until May 7, 2015, fifty-five days after the arraignment and fifteen days after the forty-day deadline. *See* Iowa R. Crim. P. 2.11(4). In the motion, Kemp failed to articulate any reason for the untimely filing, and the district court found Kemp "failed to establish any grounds that would constitute good cause to excuse the late filing." The State challenged the timeliness of Kemp's motion in its resistance. *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002) (holding the appellate courts "will not consider a substantive or procedural issue for the first time on appeal, even though such issue might be the only ground available to uphold a district court ruling"). Accordingly, the district court was within its discretion in denying Kemp's motion to suppress on the ground it was untimely. The court went on to rule on the merits of the motion; we also review the merits

in the context of the prejudice prong of Kemp's claim his counsel was ineffective for filing a late motion.

### B. Ineffective Assistance of Counsel.

Kemp argues his trial counsel was ineffective for failing to file a timely motion to suppress.[3] A defendant may raise an ineffective-assistance claim on direct appeal if he has reasonable grounds to believe the record is adequate for us to address the claim on direct appeal. *Straw*, 709 N.W.2d at 133. In order to prevail on his claim of ineffective assistance of counsel, Kemp must establish both that "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *See Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Kemp must prove both elements by a preponderance of the evidence. *See id.* With respect to the first prong, "we begin with the presumption that the attorney performed competently" and "avoid second-guessing and hindsight." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). Attorney action (or inaction) caused by improvident trial strategy, miscalculated tactics, or mistakes in judgment does not necessarily amount to ineffective assistance of counsel. *See State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006).

We address the prejudice prong of Kemp's ineffective-assistance-of counsel claim first. In order to prove prejudice, Kemp "must show that there is a reasonable probability that, but for counsel's [untimely filing of the motion to

---

[3] Kemp also mentions in his brief that filing the motion to suppress led to the State's withdrawal of a favorable plea offer. Kemp fails to argue, however, that trial counsel should not have filed the motion to suppress. Therefore, we evaluate Kemp's ineffective assistance-of-counsel claim based on his asserted claim of error, namely trial counsel's failure to timely file the motion to suppress.

suppress], the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. In other words, Kemp must show there is a reasonable probability the motion to suppress would have been granted. If we find that prejudice is lacking, we may decide his claim on that ground alone without addressing his counsel's performance. *Ledezma*, 626 N.W.2d at 142.

Kemp suggests he was prejudiced by the untimely filing of the motion to suppress because the search was invalid. Specifically, Kemp argues the officer's reasons for searching Kemp—Kemp was in a high-crime neighborhood, drug paraphernalia was present in the car, and Kemp placed himself in the car through his own statements—were insufficient to establish reasonable suspicion. The district court found, however, "The search [and] seizure of the drugs [that] led to the charges against Kemp were constitutional under both the federal and state constitutions." We agree with the district court.

When police have reasonable suspicion that a crime is being or about to be committed, they may conduct a pat-down search of a suspect. *State v. Bergmann*, 633 N.W.2d 328, 332 (Iowa 2001) (citing *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968)); *see also Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) ("[A]n officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot."). The purpose of a *Terry* search is "to determine whether the person is in fact carrying a weapon," and the search is "strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 24, 26). "If the protective search goes beyond what is

necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Id.* During a *Terry* search, an officer is permitted to seize contraband without a warrant "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent" as contraband. *Id.* at 375–76.

"In determining whether reasonable suspicion exists, we consider the totality of the circumstances in light of the officers' experience and specialized training." *United States v. Cotter*, 701 F.3d 544, 547 (8th Cir. 2012) (quoting *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012)).

> In determining the reasonableness of the particular search or seizure, the court judges the facts against an objective standard: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"

*State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (quoting *Terry*, 392 U.S. at 21–22). Additionally, "due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or 'hunch' but to specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 21–22.

Generally, an anonymous tip regarding the observable location and appearance of an individual is sufficient to establish reasonable suspicion when the tip is "reliable in its assertion of *illegality*." *Florida v. J.L.*, 529 U.S. 266, 272 (2000) (emphasis added); *Alabama v. White*, 496 U.S. 325, 330 (1990); *State v. Kooima*, 833 N.W.2d 202, 210–11 (Iowa 2013) ("[A] bare assertion by an anonymous tipster, without relaying to the police a personal observation of [criminal activity], other facts to establish the driver is [engaged in criminal

activity], or details not available to the general public as to the defendant's future actions does not have the requisite indicia of reliability to justify an investigatory stop. Such a tip does not meet the requirements of the Fourth Amendment."). The defendant's presence in a high-crime area[4] alone is insufficient to establish reasonable suspicion, but it is a relevant factor. *Wardlow*, 528 U.S. at 124; *Green*, 2008 WL 680385, at *4.

Here, Officer Becker responded to an anonymous tip suggesting an orange Dodge Avenger driven by a man the same race as Kemp in his forties or fifties was engaging in activities consistent with narcotic sales. The tipster also informed Becker that he observed drugs in the vehicle. Becker located the vehicle matching the description and license plate of the anonymous tip in a high-crime area parked at a closed business at 1:30 in the morning. Kemp also matched the description of the driver in the anonymous tip. Kemp approached the officers and stated he arrived in the car, which by his own admission placed him in the car prior to the encounter. Officer Morgan then alerted Becker that there was drug paraphernalia in the vehicle. The officers corroborated the identification and *illegal activity* in the content of the tip by verifying drug paraphernalia was present in the car. The incident took place in a known high-crime area, and the officers were trained in narcotics identification. These factors are sufficient to establish the reasonable inference that Kemp was committing or about to commit criminal activity. Becker was permitted to conduct a pat-down search based on officer safety and, upon feeling the items in Kemp's pockets, a

---

[4] High-crime areas can be established by complaints of drug-dealing activity and previous police encounters for drugs or weapons activity. *See Wardlow*, 528 U.S. at 124; *State v. Green*, 06-2051, 2008 WL 680385, at *4 (Iowa Ct. App. Mar. 14, 2008).

plain-feel search.[5]  Kemp's constitutional rights under the Iowa and Federal Constitutions were not violated.  Accordingly, even if Kemp's counsel timely filed the motion to suppress, it would have not changed the result of the proceedings. Thus, Kemp has failed to establish that he suffered prejudice due to his counsel's actions, and his claim of ineffective assistance fails.

**AFFIRMED.**

---

[5] While a plain-feel search was appropriate under the circumstances, Officer Becker testified that he did not reach into Kemp's pocket during the *Terry* search.  In fact, the pocket was not searched until Kemp was detained and placed in handcuffs after he ran from the scene and resisted the officers.